The Honorable Randy Laverty State Senator Post Office Box 165 Jasper, Arkansas 72641
Dear Senator Laverty:
I am writing in response to your request for an opinion on the following:
 1) A former Mayor will soon attain the age of 60, making him eligible for retirement under Code Section 24-12-123. Should his retirement pay be computed on the salary he was being paid when he ended his mayor's term (several years ago) or the present Mayor's salary being paid when the former Mayor reaches age 60 and is entitled to draw his retirement?
 2) Our present Mayor will soon be eligible for retirement under Code 24-12-123. He is being paid a monthly fixed amount in addition to his salary to cover his auto expenses. Is the City obligated to include the car allowance payment in his salary for retirement purposes? The Mayor argues that since the amount is included in his W-2 it should be considered part of his salary for retirement calculation.
 3) Does the "salary" for retirement under Code Section 24-12-123
include any other fringe benefits such as insurance payments, sick pay, vacation pay, etc?
RESPONSE
With respect to your first question, it is my opinion that the language of A.C.A. § 24-12-123 (Repl. 2002) is ambiguous and that a court would likely hold that a mayor will be entitled to a retirement benefit of one-half of the salary that was paid to the former mayor during his or her final year in office. With respect to your second question, I reiterate my previous opinion found in Op. Att'y Gen. 2003-050 that a fixed automobile expense allowance for a mayor of a city of the first class is not "salary" and, therefore, should not be considered in determining the retirement payments of the mayor in your request for an opinion. With respect to your third question, this office has consistently opined that "salary" does not include "fringe benefits."
Question One: A former Mayor will soon attain the age of 60, making himeligible for retirement under Code Section 24-12-123. Should hisretirement pay be computed on the salary he was being paid when he endedhis mayor's term (several years ago) or the present Mayor's salary beingpaid when the former Mayor reaches age 60 and is entitled to draw hisretirement?
As an initial matter, I will note that you claim that the former mayor will be eligible to receive retirement benefits under A.C.A. § 24-12-123
upon reaching the age of 60. I will assume from this statement that the former mayor in question has accumulated the required ten years of mayoral service to be eligible under A.C.A. § 24-12-123.
The appropriate code section, as you note in your request, is A.C.A. §24-12-123. Section 24-12-123 provides in pertinent part:
 (a)(1)(A) In all cities of the first class in this state, any person who shall serve as mayor of the city for a period of not less than ten (10) years, upon reaching age sixty (60), or any person who shall serve as mayor of the city for a period of not less than twenty (20) years, without regard to age, shall be entitled to retire at an annual retirement benefit during the remainder of the person's natural life payable at a rate of one-half (1/2) of the salary payable to the mayor at the time of retirement.
Id. The retirement benefit of a mayor is determined by the salary of "the mayor at the time of retirement" by the plain and ordinary language of the statute. In my opinion this section is ambiguous. I am unable to determine from the statute alone whether the salary payable to the former mayor as a retirement benefit is to be determined by the salary of the current mayor or the salary the former mayor received while in office.
In my opinion, a court would hold that the intent of A.C.A. § 24-12-123
is to provide a retirement benefit calculated on the salary of the former mayor at the completion of the former mayor's term of office.
In my opinion, A.C.A. § 24-12-123 is ambiguous because it is unclear whether the words "the mayor" in the phrase "one-half (1/2) of the salary payable to the mayor at the time of retirement" (emphasis added), as used in A.C.A. § 24-12-123(a)(1)(A), refer to the former mayor who is currently retiring, or the sitting mayor at the time of the former mayor's retirement. If, in the interim between the mayor leaving office and retiring, the city increases the salary of subsequent mayors, the statute is somewhat unclear as to which salary level is applicable. In my opinion, however, interpreting the statute to give the former mayor the benefit of subsequent salary increases would not be consistent with legislative intent. Cf., e.g., A.C.A. § 24-12-121 (entitling a city clerk, city treasurer or clerk-treasurer to retire at "one-half (1/2) of the monthly salary received by him or her during the last preceding year of his or her service.")
This conclusion is bolstered by reference to the individual acts comprising this section of the Arkansas Code. See, e.g., Bourne v. Boardof Trustees, 347 Ark. 19, 59 S.W.3d 432 (2001) (relying on language of original act where codification contained different language). The most recent act amending A.C.A. § 24-12-123 is Act 1700 of 2001. As adopted by that Act, the relevant phrase entitles a retiring mayor to "one-half (1/2) of the salary payable to the mayor at the time of his retirement." (Emphasis added.) The Arkansas Code Revision Commission, however, in codifying this act, omitted the word "his," apparently in an effort to make the statute gender-neutral. See A.C.A. § 1-2-303(d)(1)(R) (Supp. 2005). In my opinion, the word "his" as used in this phrase, refers back to the ambiguous words "the mayor" and indicates that the relevant "mayor" for purposes of this phrase, and thus the relevant salary upon which to base retirement benefits, is the salary of the mayor who is retiring. Admittedly, however, this phrase, as thus construed, overlooks the possibility of a time lag between the end of the mayor's service and his retirement, in the event, for example, that the mayor serves ten years but is not yet sixty years of age when leaving office. In my opinion, however, the above construction of the statute is more consistent with the legislative intent than a construction entitling the former mayor to benefits based on a sitting mayor's salary. That construction in my opinion, as noted previously, would not be consistent with legislative intent.
Question Two: Our present Mayor will soon be eligible for retirementunder Code 24-12-123. He is being paid a monthly fixed amount in additionto his salary to cover his auto expenses. Is the City obligated toinclude the car allowance payment in his salary for retirement purposes?The Mayor argues that since the amount is included in his W-2 it shouldbe considered part of his salary for retirement calculation
In my opinion, the additional amount paid to the current mayor for his automobile expenses should not be considered salary for retirement purposes.
I have previously opined that an "automobile expense allowance paid to a mayor of a first class city" does not constitute "salary" under A.C.A. §14-42-113 (Supp. 2005). Op. Att'y Gen. 2003-050. In reaching this conclusion, I relied on the opinion of one of my predecessors who opined that the inclusion of gross amounts for personal use of state cars on federal W2 forms would not be considered "salary" by an Arkansas Court.See Op. Att'y Gen. 90-231. In my opinion, the reasoning of Op. Att'y Gen. 2003-050, that an automobile expense account is not a fixed, periodic compensation for services rendered, also applies to A.C.A. § 12-24-123. I have enclosed a copy of Op. Att'y Gen. 2003-050 for your convenience.
Question Three: Does the "salary" for retirement under Code Section24-12-123 include any other fringe benefits such as insurance payments,sick pay, vacation pay, etc?
In my opinion, the term "salary" does not include fringe benefits such as insurance payments, see, e.g., Op. Att'y Gen. 99-207 (recognizing insurance payments as a "fringe benefit"), sick leave, see, e.g., Op. Att'y Gen. 2004-337 (noting that sick leave is a "fringe benefit" of employment), or vacation hours, id. See Ops. Att'y Gen. 2003-050; 99-207; and 90-231. I have enclosed a copy of Op. Att'y Gen. 99-207 for your convenience.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh